IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
5:15-CV-165-FL

| | |
|---|---|
| BRIAN GEORGE DAY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | **ORDER and** |
| v. ) | **MEMORANDUM and** |
| ) | **RECOMMENDATION** |
| A.T. SANTANIELLO (Raleigh PD Officer) ) | |
| & spouse; ROY B. BIVERENT (Raleigh PD ) | |
| Officer) & spouse; K. B. HINTON (Wake ) | |
| County Sheriff Deputy) & spouse; T. BIRD ) | |
| (Wake County Sheriff Deputy and Bailiff) & ) | |
| spouse; SHAUN MIDDLEBROOK (District ) | |
| Attorney) & spouse; JENNIFER SIMMONS ) | |
| (District Attorney) & spouse; CASEY ) | |
| REGO (District Attorney) & spouse; ERIC ) | |
| CRAIG CHASSE (Judge) & spouse; LOUIS ) | |
| MEYER (Judge) & spouse; ANNE ) | |
| SALISBURY (Judge) & spouse; DANIEL ) | |
| NAGEL (Judge) & spouse; JAMES E. ) | |
| HARDIN, JR. (Judge) & spouse; JOHN H. ) | |
| CONNELL (Clerk of Court, NC Court of ) | |
| Appeals) & spouse, ) | |
| ) | |
| Defendants. ) | |

This pro se case is before the court on the motion (D.E. 1) by plaintiff Brian George Day ("plaintiff") to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915(a)(1) and for a frivolity review pursuant to 28 U.S.C. § 1915(e)(2)(B). These matters were referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), respectively. (*See* 1st Public D.E. dated 16 April 2015). For the reasons stated below, the court will allow plaintiff's motion to proceed *in forma pauperis*, but recommend that this case be dismissed for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted.

## MOTION TO PROCEED *IN FORMA PAUPERIS*

The court finds that plaintiff has adequately demonstrated his inability to pre-pay the required court costs. His motion is therefore ALLOWED.

## MEMORANDUM AND RECOMMENDATION

### I. BACKGROUND

In his complaint (D.E. 1-1), plaintiff, a resident of Raleigh, North Carolina, lists 26 individuals as defendants: 4 law enforcement officers (*i.e.*, Raleigh Police Department ("RPD") Officers A.T. Santaniello and Roy B. Biverent, and Wake County Deputy Sheriffs K.B. Hinton and T. Bird); 3 assistant district attorneys (*i.e.*, Shaun Middlebrook, Jennifer Simmons, and Casey Rego); 5 judges (*i.e.*, Eric Craig Chasse, Louis Meyer, Anne Salisbury, Daniel Nagle,[1] and James E. Hardin, Jr.); Clerk of the North Carolina Court of Appeals John H. Connell; and the spouses of each of the foregoing defendants. (Compl. 1, ¶ 6). The case arises from two traffic citations issued to plaintiff. He received one for an unspecified violation that the complaint suggests was speeding from defendant Santaniello on 17 November 2013. (*See* Compl. (D.E. 1-1) ¶¶ 8 (alleging police were monitoring travelers with "a LIDAR speed measuring device"), 9, 38). He received the other for "exceeding a safe speed for conditions" from defendant Hinton on 16 February 2015. (*See id.* ¶¶ 10, 34). Plaintiff alleges that defendants Santaniello and Hinton exceeded their lawful authority and, in conspiracy with others, violated various of his constitutional rights. (*See id.*, *e.g.*, ¶¶ 9, 10, 12, 28-30, 32-34, 40, 41).

---

[1] While plaintiff has spelled this defendant's last name as "Nagel" in the caption of the complaint, he spells it "Nagle" elsewhere. (*See, e.g.*, Compl. ¶¶ 15, 17, 31). Because it is clear that plaintiff intends to name as a defendant Wake County District Court Judge Daniel J. Nagle, *see* http://www1.aoc.state.nc.us/juddir/employee/display.do?action=view&primaryKey=11714820 (last visited 7 Oct. 2015), the court uses this spelling herein.

Plaintiff also alleges that the state court proceedings on the two traffic citations violated many of his rights. (*See id.*, *e.g.*, ¶¶ 10-31, 36-42). Arguably the most fundamental is the state courts acting despite their purported lack of jurisdiction over him and their purported refusal to respond to his multiple requests for an explanation of their jurisdiction. (*See id.*, *e.g.*, ¶¶ 11, 13, 18, 29, 39). He also alleges that the state courts deprived him of his rights to a speedy trial, trial by jury, due process, a public trial (due to the seizure of an audio recorder from him during a court session), and judicial review (due to the North Carolina Court of Appeals' refusal to process a "CERTIFICATE OF IMMEDIATE REVIEW" he submitted to it). (*See id.*, *e.g.*, 24-26, 36). He alleges that defendants conspired to commit these deprivations of his rights. (*See id.* ¶¶ 1, 41).

Liberally read, as required, the complaint asserts claims for violation of his rights under the Fifth, Sixth, and Fourteenth Amendments pursuant to 42 U.S.C. § 1983 ("§ 1983"); conspiracy to commit such violations under 18 U.S.C. § 1985 ("§ 1985"); and conspiracy in violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(d). Plaintiff alleges subject matter jurisdiction of this court under, among other statutes (*see generally id.* ¶ 8): 28 U.S.C. § 1331, providing for federal question jurisdiction (Civ. Cover Sheet § II.3); 28 U.S.C. § 1343, providing for jurisdiction over § 1985 claims (Compl. ¶ 8); and, by implication, 18 U.S.C. § 1964(c), providing for jurisdiction over RICO claims (*id.* ¶ 41).

Plaintiff seeks compensatory damages in the total amount of $7,021,000, broken down as follows: (1) $10,500 for missed work as a result of mandatory court appearances; (2) $10,500 for time spent preparing his legal defense; and (3) $7,000,000 for copyright infringement arising from the use of plaintiff's name in official correspondence and court proceedings. (*Id.* at 8 ¶¶ A-D). Plaintiff also demands a trial by jury. (*Id.* at 1).

3

## II. LEGAL STANDARDS APPLICABLE

After allowing a party to proceed *in forma pauperis*, as here, the court must conduct a frivolity review of the case pursuant to 28 U.S.C. § 1915(e)(2)(B). The court must determine whether the action is frivolous or malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from an immune defendant, and is thereby subject to dismissal. 28 U.S.C. § 1915(e)(2)(B); *see Denton v. Hernandez*, 504 U.S. 25, 27 (1992) (standard for frivolousness).

In evaluating frivolity specifically, a pro se plaintiff's pleadings are held to "less stringent standards" than those drafted by attorneys. *White v. White*, 886 F.2d 721, 722-23 (4th Cir. 1989). Nonetheless, the court is not required to accept a pro se plaintiff's contentions as true. *Denton*, 504 U.S. at 32. Instead, the court is permitted to "pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." *Neitzke v. Williams*, 490 U.S. 319, 327 (1989). Provided that a plaintiff's claims are not clearly baseless, the court must weigh the factual allegations in plaintiff's favor in its frivolity analysis. *Denton*, 504 U.S. at 32. The court must read the complaint carefully to determine if a plaintiff has alleged specific facts sufficient to support the claims asserted. *White*, 886 F.2d at 724.

A court may consider subject matter jurisdiction as part of the frivolity review. *See Lovern v. Edwards*, 190 F.3d 648, 654 (4th Cir. 1999) (holding that "[d]etermining the question of subject matter jurisdiction at the outset of the litigation is often the most efficient procedure"); *Cornelius v. Howell*, No. 3:06-3387-MBS-BM, 2007 WL 397449, at *2-4 (D.S.C. 8 Jan. 2007) (discussing the lack of diversity jurisdiction during frivolity review as a basis for dismissal). "Federal courts are courts of limited jurisdiction and are empowered to act only in those specific situations authorized by Congress." *Bowman v. White*, 388 F.2d 756, 760 (4th Cir. 1968). The

presumption is that a federal court lacks jurisdiction in a particular case unless it is demonstrated that jurisdiction exists. *Lehigh Min. & Mfg. Co. v. Kelly*, 160 U.S. 327, 336 (1895). The burden of establishing subject matter jurisdiction rests on the party invoking jurisdiction, here plaintiff. *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982) ("The burden of proving subject matter jurisdiction . . . is on the plaintiff, the party asserting jurisdiction.").

To establish a claim under § 1983, a plaintiff must prove: (1) the violation of a right secured by the Constitution and laws of the United States, and (2) that the deprivation of the right was committed by a person acting under the color of state law. *Williams v. Studivent*, No. 1:09CV414, 2012 WL 1230833, at *4 (M.D.N.C. 12 Apr. 2012) (citing *West v. Atkins*, 487 U.S. 42, 48 (1988)). To show that that a defendant acted under the color of state law, "'[t]he person charged must either be a state actor or have a sufficiently close relationship with state actors such that a court would conclude that the non-state actor is engaged in the state's actions.'" *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 615-16 (4th Cir. 2009) (quoting *DeBauche v. Trani*, 191 F.3d 499, 506 (4th Cir. 1999)).

Title 42 U.S.C. § 1985 ("§ 1985") provides a cause of action for conspiracy to interfere with certain otherwise federally protected rights. Section 1985(3) provides a claim specifically for conspiracies to deprive an individual of the equal protection of the law.

### III. DISCUSSION

The court finds that it lacks subject matter jurisdiction over the issues that comprise the subject matter of the underlying state proceeding pursuant to the *Rooker-Feldman* doctrine and *Younger* abstention doctrine. To the extent that any of plaintiff's claims are not barred by *Rooker-Feldman* or *Younger*, the court finds that plaintiff has failed to state any claim upon which relief may be granted.

5

A.  Lack of Subject Matter Jurisdiction

1.  *Rooker-Feldman* Doctrine

The *Rooker-Feldman* doctrine bars federal courts from sitting "in direct review of state court decisions."  *District of Columbia Ct. App. v. Feldman*, 460 U.S. 462, 482-84 (1983). "[T]he *Rooker-Feldman* doctrine applies only when the loser in state court files suit in federal district court seeking redress for an injury allegedly caused by the state court's decision itself." *Davani v. Virginia Dep't of Transp.*, 434 F.3d 712, 713 (4th Cir. 2006) (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005)).  This doctrine also prohibits a district court from reviewing constitutional claims that are "inextricably intertwined" with a state court decision. *Shooting Point, LLC v. Cumming*, 368 F.3d 379, 383 (4th Cir. 2004).  A constitutional claim is "inextricably intertwined" with a state court decision if "'success on the federal claim depends upon a determination that the state court wrongly decided the issues before it.'" *Id.* (quoting *Plyler v. Moore*, 129 F.3d 728, 731 (4th Cir. 1997)); *see also Curley v. Adams Creek Assocs.*, 409 F. App'x 678, 680 (4th Cir. 2011) (holding that *Rooker-Feldman* precluded subject matter jurisdiction over plaintiff's claim that the state court violated her due process rights by failing to give her notice before disposing of real property owned by her); *Jordahl v. Democratic Party of Va.*, 122 F.3d 192, 200, 202 (4th Cir. 1997) (holding that a federal claim is "inextricably intertwined" where "'in order to grant the federal relief sought, the federal court must determine that the [state] court judgment was erroneously entered or must take action that would render the judgment ineffectual'" (quoting *Ernst v. Child and Youth Servs.*, 108 F.3d 486, 491 (3d Cir. 1997))).

In other words, *Rooker-Feldman* applies "when the federal action 'essentially amounts to nothing more than an attempt to seek review of [the state court's] decision by a lower federal

court.'" *Davis v. Durham Mental Health Devel. Disabilities Substance Abuse Area Auth.*, 320 F. Supp. 2d 378, 388 (M.D.N.C. 2004) (quoting *Plyer v. Moore*, 129 F.3d 728, 733 (4th Cir. 1997)). "The key inquiry is not whether the state court ruled on the precise issue raised in federal court, but whether the 'state-court loser who files suit in federal court seeks redress for an injury caused by the state-court decision itself.'" *Willner v. Frey*, 243 F. App'x 744, 747 (4th Cir. 2007) (quoting *Davani*, 434 F.3d at 718). "'[A] party losing in state court is barred from seeking what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights.'" *Brown & Root, Inc. v. Breckenridge*, 211 F.3d 194, 198 (4th Cir. 2000) (quoting *Johnson v. De Grandy*, 512 U.S. 997, 1005-06 (1994)).

Here, plaintiff is, in part, seeking to litigate in this court the issue of state court jurisdiction over the traffic citations that the state courts have, according to the complaint, rejected. (*See* Compl. ¶ 13 ("Plaintiff filed multiple notices of 'Special Visitation' whereby jurisdictional challenges were demanded prior to a hearing.")) Any such claim by plaintiff is barred by *Rooker-Feldman*. *See*, *e.g.*, *Dajani v. Governor and Gen. Assembly of Md.*, 15 F. App'x 122 (4th Cir. 2001). In that case, the Fourth Circuit affirmed a district court's dismissal, per *Rooker-Feldman*, of a § 1983 challenge to the Maryland traffic code. The court held that "the federal courts lack jurisdiction over Dajani's constitutional challenges to the Maryland code because Dajani is necessarily asking the district court to conclude the Maryland court wrongly decided the issues before it, which the district court does not have jurisdiction to do." *Dajani*, 15 F. App'x at 123. Therefore, any claim by plaintiff challenging state court jurisdiction over the traffic citation proceedings should be dismissed for lack of subject matter jurisdiction.

7

### 2. *Younger* Abstention

*Younger v. Harris*, 401 U.S. 37 (1971) established the principle that federal courts should not intervene in state court criminal, civil, and administrative proceedings. *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 604 (1975). "*Younger* and 'its progeny espouse a strong federal policy against federal-court interference with pending state judicial proceedings absent extraordinary circumstances.'" *Beam v. Tatum*, 299 F. App'x 243, 245 (4th Cir. 2008) (quoting *Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 431 (1982)). Abstention is required where "(1) there is an ongoing state judicial proceeding brought prior to substantial progress in the federal proceeding; that (2) implicates important, substantial, or vital state interests; and (3) provides adequate opportunity to raise constitutional challenges." *Nivens v. Gilchrist*, 444 F.3d 237, 241 (4th Cir. 2006).

All three elements are met in this case. First, the allegations in plaintiff's complaint suggest that there are ongoing state judicial proceedings on at least one of the traffic citations issued to him. (*See* Compl. ¶ 11). Second, matters relating to the regulation of motor vehicles and motor vehicle traffic unquestionably implicate important state interests. *Delaware v. Prouse*, 440 U.S. 648, 658 (1979) ("We agree that the States have a vital interest in ensuring that only those qualified to do so are permitted to operate motor vehicles, that these vehicles are safe for operation, and hence that licensing, registration, and vehicle inspection requirements are being observed."); *Raymond Motor Transp., Inc. v. Rice*, 434 U.S. 429, 442 (1978) ("[A] State has a legitimate interest in regulating motor vehicles using its roads in order to promote highway safety."). Even in a case in which the defendant was a federal officer seeking removal pursuant to 28 U.S.C. § 1442, the Fourth Circuit found that "the facts in dispute . . . do not speak to the federal character of the incident" and held that the federal district court lacked subject matter

jurisdiction, as the general factual and legal questions incident to ordinary traffic cases "are simply matters for the state courts to resolve." *North Carolina v. Ivory*, 906 F.2d 999, 1002 (4th Cir. 1990). Third, plaintiff has an adequate state forum to pursue his constitutional and other claims. *Beam v. Tatum*, 299 F. App'x 243, 248 (4th Cir. 2008). The court accordingly concludes that the principle of abstention under *Younger* provides an independent ground for dismissal of this case for lack of subject matter jurisdiction. *See Carter v. Archdale Police Dep't,* No. 1:13cv613, 2014 WL 791863, at *4 (M.D.N.C. 25 Feb. 2014) ("It is clear that [plaintiff] believes that the pending state criminal charges against him lack merit, but he must challenge the legitimacy of the charges against him in state criminal court and then, if necessary, pursue appropriate relief.").

### B. Failure to State a Claim

Irrespective of the lack of subject matter jurisdiction over this case, plaintiff has failed to state a claim upon which relief can be granted with respect to many, if not all, his claims.

#### 1. Section 1983 and 1985 Claims

Plaintiff's challenge to the jurisdiction of the state courts appears to be based on "sovereign citizen" or "redemptionist" theories (*see* Compl. ¶ 42), which district courts in this circuit have consistently rejected as frivolous. *See Johnson v. North Carolina*, No. 4:14-CV-50-FL, 2015 WL 413607, at *5 (E.D.N.C. 30 Jan. 2015) (collecting cases). It is a longstanding principle of American public law that "every State possesses exclusive jurisdiction and sovereignty over persons and property within its territory." *Pennoyer v. Neff*, 95 U.S. 714, 722 (1877). Accordingly, plaintiff's claims, to the extent based on his challenge to the state courts' jurisdiction, fail to state a claim upon which relief can be granted.

9

As noted, plaintiff claims that his Sixth Amendment right to a public trial was violated when he was prevented from setting up recording equipment in the courtroom. (Compl. ¶¶ 15-16). "The requirement of a public trial is satisfied by the opportunity of members of the public and the press to attend the trial and to report what they have observed." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 610 (1978) (holding that the Sixth Amendment does not guarantee a right to record and broadcast court proceedings). Accordingly, plaintiff has failed to state a claim for violation of his Sixth Amendment right to a public trial.

Plaintiff's complaint alleges that he demanded a jury trial in state court and was denied, which he alleges constitutes a violation of his right to a trial by jury under the Sixth and Fourteenth Amendments. (Compl. ¶ 11). "There is a category of petty crimes or offenses which is not subject to the Sixth Amendment jury trial provision and should not be subject to the Fourteenth Amendment jury trial requirement here applied to the States." *Duncan v. Louisiana*, 391 U.S. 145, 159 (1968). Generally, any offense punishable by a term of imprisonment for a maximum of six months is considered petty and therefore not subject to the Sixth Amendment and Fourteenth Amendment jury trial requirements. *Baldwin v. New York*, 399 U.S. 66, 68-69 (1970) (defining "petty offense" for Sixth Amendment purposes and involving state-law offenses). Even where a defendant is charged with multiple counts of a petty offense and faces an aggregate potential term of imprisonment of more than six months, the Sixth Amendment does not guarantee a jury trial. *Lewis v. United States*, 518 U.S. 322, 330 (1996) (involving federal petty offenses).

The charge against plaintiff in the 2015 citation, "exceeding a safe speed for conditions" (Compl. ¶ 34), appears to be for violation of N.C. Gen. Stat. § 20-141(a). Under North Carolina law, that offense is merely an infraction, that is, a noncriminal violation sanctionable by a

penalty of not more than $100. *See* N.C. Gen. Stat. §§ 14-3 (stating that "[a]n infraction is a noncriminal violation of law not punishable by imprisonment" and providing a sanction of up to $100 unless otherwise provided by law); 20-176(a) (providing that violation of a provision of pt. 10 of art. 3 of ch. 20, where § 20-141(a) is located, is an infraction unless specifically declared to be a misdemeanor or felony), (b) (providing for a penalty of not more than $100 for an infraction under art. 3 of ch. 20 unless otherwise provided by law). Thus, the 2015 charge does not appear to even reach the level of a misdemeanor.

It is also questionable whether the 2013 citation was for a violation constituting more than a petty offense. Indeed, numerous violations of the motor vehicle laws are presumptively infractions, as violation of N.C. Gen. Stat. § 20-141(a) is. *See id.* § 20-176(a) (providing that pts. 9 to 11 of art. 3 of ch. 20 are infractions unless otherwise provided by law). The most severe charge possible for speeding under the speeding statute apparently applicable to the 2015 citation is a Class 2 misdemeanor and applies to speeding by load-carrying commercial vehicles subject to permit requirements for excessive size or weight, a circumstance the complaint does not suggest was present here. *Id.* § 20-141(j3). A Class 2 misdemeanor is punishable by up to only 60 days in custody. *Id.* § 15A-1340.23(c).

The court concludes that plaintiff's allegations fail to show that he is entitled to a jury trial under the Sixth or Fourteenth Amendments on either of the citations against him. His claim for violation of his right to a jury trial is therefore subject to dismissal for failure to state a claim.

  2. **Immunity**

Immunity bars various claims plaintiff attempts to assert. For example, the Eleventh Amendment provides a state, state agents, and state instrumentalities immunity from suits brought by citizens of the state (as well as citizens of another state and subjects of any foreign

11

state). *See*, *e.g.*, *Kirby v. N.C. State Univ.*, No. 5:13–CV–850–FL, 2015 WL 1036946, at *3 (E.D.N.C. 10 Mar. 2015). Eleventh Amendment immunity bars any claims against the defendant assistant district attorneys, judges, and clerk of court in their official capacities. *Everson v. Doughton,* 267 F. App'x, 229, 229-30 (4th Cir. 2008) (Eleventh Amendment barred claims against judge for acts conducted in official capacity); *Taylor v. Brooks,* C/A No. 3:15–1138–RMG–MGB, 2015 WL 4257022, at *4 (D.S.C. 21 May 2015) (claims against clerk of court in official capacity barred by Eleventh Amendment immunity), *rep. and recomm. adopted* by 2015 WL 4274834, at *2 (14 Jul. 2015); *Davenport v. Keith,* No. 2:14–CV–36–D, 2014 WL 5790970, at *1 (E.D.N.C. 6 Nov. 2014) ("Finally, the Eleventh Amendment bars plaintiff's claims for damages against [the District Attorney] in his official capacity and against the District Attorney's Office.").

The law provides absolute immunity from personal liability for activities conducted by "an officer of the court," including judges and prosecutors, as long as the conduct at issue is closely associated with the judicial phase of the criminal process. *Van de Kamp v. Goldstein*, 555 U.S. 335, 341–43 (2009); *Riley v. Fidelity Info. Servs.,* No. 3:15–02331–MGL*,* 2015 WL 5530176, at *5 (D.S.C. 17 Sept. 2015) ("It is well-settled that judges have absolute immunity from a claim for damages arising out of their judicial actions."); *Puckett v. Carter*, 454 F. Supp. 2d 448, 452 (M.D.N.C. 2006) ("[P]rosecutors enjoy absolute immunity from civil suits for damages for actions taken while performing traditional prosecutorial duties."). Plaintiff's purported claims against the judge and assistant district attorney defendants are connected with the proceedings against plaintiff on the traffic citations against him. Absolute immunity therefore bars any claims against the judge and assistant district attorney defendants in their individual capacities. *See Riley,* 2015 WL 5530176, at *5 (dismissing § 1983 claims against

12

bankruptcy judge on frivolity review arising from judicial acts during court proceedings); *Manteen-El v. Price,* No. 3:15–cv–58–FDW, 2015 WL 631382, at *3 (W.D.N.C. 12 Feb. 2015) (dismissing § 1983 claims on frivolity review against district attorney and assistant district attorney because they were entitled to prosecutorial immunity for claims arising from their state court prosecution of plaintiff); *Footman v. Banks*, No. 5:13–cv–02320–TLW, 2014 WL 4662428, at *3 (D.S.C. 13 Sept. 2013) (concluding that claims against state prosecutor should be dismissed for frivolity on grounds of prosecutorial immunity), *rep. and recomm. adopted on other grounds* by 2014 WL 4662428, at *2 (17 Sept. 2014).

Similarly, "[a] clerk of court is entitled to quasi-judicial immunity when carrying out judicial functions." *Bayyari v. Shapiro,* No. 5:14–CV–312–FL, 2014 WL 5427986, at *4 (E.D.N.C. 2 Sept. 2014); *see also Williams v. Cooper*, No. 3:12–cv–83–RJC, 2012 WL 4498271, at *3 (W.D.N.C. 28 Sept. 2012) ("Court clerks are accorded derivative absolute immunity when they act in obedience to judicial order or under the court's direction."). Here, the only conduct in plaintiff's complaint attributed to defendant Clerk of the North Carolina Court of Appeals McConnell is his refusal to process a "CERTIFICATE OF IMMEDIATE REVIEW" submitted by plaintiff. (*See* Compl. ¶ 36 ). Plaintiff's claims against defendant McConnell are therefore barred by quasi-judicial immunity. *See*, *e.g.*, *Green v. North Carolina*, No. 4:08–CV–135–H, 2010 WL 3743767, at *3 (E.D.N.C. 21 Sept. 2010) ("Inasmuch as plaintiff is attempting to make claims which arise out of actions by the superior court judge and/or the clerk of court within their capacities as judicial officers, these claims are barred by the doctrine of judicial immunity.").

Law enforcement officers and certain other government officials enjoy qualified immunity from civil damages when "'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Evans v. Britt*, 2015

13

WL 2450547, at *11 (E.D.N.C. 21 May 2015) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Thus, qualified immunity applies when either "(1) the plaintiff has not demonstrated a violation of a constitutional right, or (2) the court concludes that the right at issue was not clearly established at the time of the official's alleged misconduct." *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)). The allegations in plaintiff's complaint relating specifically to defendant Santaniello, the RPD Officer who allegedly issued the 2013 citation to plaintiff, focus on his purported failure to answer inquiries from plaintiff regarding the state's jurisdiction over him. (*See* Compl. ¶¶ 9-10). As discussed, plaintiff's jurisdictional challenge is baseless. Plaintiff has therefore not demonstrated constitutional violations by defendant Santaniello and any claims against him are therefore barred by his qualified immunity.

### 3. Other Grounds

Although naming defendants Biverent, Simmons, and Meyer in the caption of his complaint, plaintiff asserts no allegations relating specifically to them. The claims against these defendants therefore fail.

Similarly, while plaintiff has included every named defendant's spouse among the defendants in this case, he has not alleged any facts pertaining to any of them, aside from the conclusory allegation that they "enjoyed the profit from Defendants' criminal activity living on the largess and unlawful spoils brought home by their husbands/wives." (Compl. ¶ 35). Accordingly, plaintiff has failed to state a claim against any named defendant's spouse.

Plaintiff claims to hold the copyright for his legal name and seeks damages for copyright infringement arising from the use of his name in the courtroom and in official correspondence. (*Id.* ¶ 42). "Words and short phrases such as names" are not subject to copyright. 37 C.F.R. § 202.1(a). Accordingly, plaintiff has failed to state a copyright claim.

14

## III. CONCLUSION

For the foregoing reasons, it is RECOMMENDED that this action be DISMISSED in its entirety pursuant to 28 U.S.C. § 1915(e)(2)(B)(i)-(iii).

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on plaintiff. Plaintiff shall have until 21 October 2015 to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct her own review (that is, make a de novo determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C.

**If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation.** *See Wright v. Collins*, **766 F.2d 841, 846-47 (4th Cir. 1985).**

SO ORDERED, this 7th day of October 2015.

_____
James E. Gates
United States Magistrate Judge